IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

TRACY MASON, Individually and as
Personal Representative of the Estate of Samuel
Washington Mason, Deceased,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS, JARIUS GREEN, GEORGE
GREEN, ANTHONY HOWELL, MYCNEL
JEAN-LOUIS, M. LIMIA, CARLETHA
HOWARD, MICHELE VASSELL, SCOTT J.
ISRAEL, ARMOR CORRECTIONAL
HEALTH SERVICES, INC., LATOYA
SCOTT, VONITA WILCOX, and
UNIDENTIFIED DOCTOR,

      Defendants.
_____/

## COMPLAINT

Plaintiff, TRACY MASON, individually and as Personal Representative of the Estate of

Samuel Washington Mason, Deceased, brings this wrongful death, medical malpractice, and

negligence action under Florida law and under provisions of the United States Constitution pursuant

to 42 U.S.C. § 1983 for the Defendants' misconduct which proximately caused the death of

Plaintiff's husband, Samuel Washington Mason, at the South Florida Reception Center, a Florida

Department of Corrections Facility located in the City of Doral, Miami-Dade County, Florida, on

May 26, 2011.

## JURISDICTION AND VENUE

1.      Jurisdiction is based on 28 U.S.C. §§ 1331, 1342, and 1343 and on the supplemental

jurisdiction of this Court to consider claims arising under Florida law pursuant to 18 U.S.C. § 1367.

2.      Venue is proper in the United States District Court for the Southern District of Florida where the parties reside and where the events complained of occurred.

## PARTIES

3.      Plaintiff TRACY MASON is the widow of Samuel Washington Mason, Deceased. Samuel Mason died on May 26, 2011 while in the custody of the Florida Department of Corrections. Mrs. Mason was appointed as Personal Representative of the Estate of Samuel Washington Mason by the Probate Division of the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida on March 1, 2013.  *See In re Estate of Samuel Washington Mason*, Case No. PRC130000819 (Fla. 17th Jud. Cir. Ct. Prob. Div. Mar. 1, 2013).

### FDOC Correctional Defendants

4.      At all times material to the allegations set forth herein, Defendant FLORIDA DEPARTMENT OF CORRECTIONS was an agency of the State of Florida that assumed the custody and care of Samuel Washington Mason on May 24, 2011.  The FLORIDA DEPARTMENT OF CORRECTIONS established policy for the custody, detention, restraint, and health care services provided to Samuel Mason while Mr. Mason was in the custody of the FLORIDA DEPARTMENT OF CORRECTIONS.  THE FLORIDA DEPARTMENT OF CORRECTIONS was the employer of the individual FDCO Correctional Defendants named below (Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis) and the individual FDOC Health Care Defendants named below (Carletha Howard, Michele Vassell, and M. Limia), who committed the acts or omissions alleged below within the course and scope of their employment with the FLORIDA DEPARTMENT OF CORRECTIONS pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.  The FLORIDA

DEPARTMENT OF CORRECTIONS is sued for claims under Florida law for acts or omissions committed by the individual FDOC Correctional Defendants and the individual FDOC Health Care Defendants. *See* §§ 768.28(9)(a) & 111.07, Fla. Stat.

5.      At all times material to the allegations set forth herein, Defendant JARIUS GREEN was an on-duty correctional officer with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011 and took all actions described herein under color of the laws of the State of Florida and within the course and scope of his employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.  JARIUS GREEN is employed in, resides in and committed tortious act in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.  JARIUS GREEN is sued in his individual capacity for claims under federal law pursuant to 42 U.S.C. § 1983.

6.      At all times material to the allegations set forth herein, Defendant GEORGE GREEN was an on-duty correctional Captain with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011 and took all actions described herein under color of the laws of the State of Florida and within the course and scope of his employment pursuant to sections 768.28(9)(a) and 111.07,  Florida Statutes.  GEORGE GREEN is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.  GEORGE GREEN is sued in his individual capacity for claims under federal law pursuant to 42 U.S.C. § 1983.

7.      At all times material to the allegations set forth herein, ANTHONY HOWELL was an on-duty correctional officer with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011 and took all actions described herein under color of the

3

laws of the State of Florida and within the course and scope of his employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes. ANTHONY HOWELL is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes. ANTHONY HOWELL is sued in his individual capacity for claims under federal law pursuant to 42 U.S.C. § 1983.

8.      At all times material to the allegations set forth herein, MYCNEL JEAN-LOUIS was an on-duty correctional officer with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011 and took all actions described herein under color of the laws of the State of Florida and within the course and scope of his employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes. MYCNEL JEAN-LOUIS is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes. MYCNEL JEAN-LOUIS is sued in his individual capacity for claims under federal law pursuant to 42 U.S.C. § 1983.

### FDOC Health Care Defendants

9.      At all times material to the allegations set forth herein, CARLETHA HOWARD was an on-duty Senior Licensed Practical Nurse with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011. CARLETHA HOWRD took all actions described herein under color of the laws of the State of Florida and within the course and scope of her employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes. CARLETHA HOWARD is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes. CARLETHA HOWARD is sued in her individual capacity for claims under federal law pursuant to 42 U.S.C. §

4

1983.

10.     At all times material to the allegations set forth herein, MICHELE VASSELL was an on-duty Senior Licensed Practical Nurse with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011.  MICHELE VASELL and took all actions described herein under color of the laws of the State of Florida and within the course and scope of her employment pursuant to sections 768.28(9)(a) and 111.07,  Florida Statutes.  MICHELE VASSELL is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.

11.     At all times material to the allegations set forth herein, M. LIMIA was an on-duty Psychiatrist with the Florida Department of Corrections working at the South Florida Reception Center on May 26, 2011 and took all actions described herein under color of the laws of the State of Florida and within the course and scope of her employment pursuant to sections 768.28(9)(a) and 111.07,  Florida Statutes.  M. LIMIA is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.  M. LIMIA is sued in her individual capacity for claims under federal law pursuant to 42 U.S.C. § 1983.

**BSO/Armor Health Care Defendants**

12.     At all times material to the allegations set forth herein, Defendant SCOTT J. ISRAEL, was Broward County Sheriff, with responsibility over the Main Jail and Victor J. Conte Facilities, in which Samuel Mason was an inmate and where Samuel Mason received medical services between May 19 and May 24, 2011.  Defendant SCOTT ISRAEL established health care practices and policies for the provision of health care for inmates in the custody of the Broward County Sheriff

5

at the Broward  Main Jail and Victor Conte Facility.  Defendant SCOTT J. ISRAEL hired or

contracted the individual BSO/Armor Health Care Defendants named below (Vonita Wilcox and the

Unidentified BSO/Armor Doctor described below) to provide health care services to Samuel Mason

while he was an inmate in the custody of the Broward County Sheriff between May 19 and May 24,

2011.  Defendant SCOTT J. ISRAEL and the individual BSO/Armor Health Care Defendants took

all actions described herein under color of the laws of the State of Florida and within the course and

scope of their employment pursuant to sections 768.28(9)(a) and 111.07,  Florida Statutes.

Defendant SCOTT is employed in, resides in, and committed tortious acts in the State of Florida and

is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.  The

SCOTT ISRAEL is sued in his capacity as Broward County Sheriff for claims under Florida law for

acts or omissions committed by Armor Correctional Health Care Services and the individual BSO

Armor Health Care Defendants named below.  *See* § 768.28(9)(a), Fla. Stat.

13.     At all times material to the allegations set forth herein, ARMOR CORRECTIONAL

HEALTH SERVICES, INC., was contracted to or did provide health care services to inmates in the

custody of the Broward County Sheriff.  ARMOR CORRECTIONAL HEALTH SERVICES

established health care and practices and policies for the provision of health care for inmates in the

custody of the Broward County Sheriff at the Broward  Main Jail and Victor Conte Facility.

ARMOR CORRECTIONAL HEALTH CARE SERVICES hired or contracted with personnel to

provide health care services to Samuel Mason while he was an inmate in the custody of the Broward

County Sheriff between May 19 and May 24, 2011.  ARMOR CORRECTIONAL HEALTH

SERVICES, INC. operates, conducts, engages in and carries on business or business venture in this

state, has an office in Miami-Dade County, Florida, and committed tortious acts within this state and

is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.  ARMOR CORRECTIONAL HEALTH SERVICES is sued for claims under Florida law for the acts or omissions of the individual BSO/Armor Health Care Defendants (Vonita Wilcox and the Unidentified BSO/Armor Doctor identified below) committed within the course and scope of their employment  and/or contractual responsibilities.

14.     At all times material to the allegations set forth herein, VONITA WILCOX was a Licensed Practical Nurse employed or contracted by the Broward Sheriff's Department and/or Armor Correctional Health Services to provide health care services to Samuel Mason while he was an inmate in the custody of the Broward County Sheriff between May 19 and May 24, 2011.  VONITA WILCOX took all actions described herein under color of the laws of the State of Florida and within the course and scope of her employment and/or contractual responsibilities pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.  VONITA WILCOX is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.

15.     At  all times material to the allegations set forth herein, the UNIDENTIFIED DOCTOR employed by SCOTT J. ISRAEL and/or ARMOR CORRECTIONAL HEALTH SERVICES  (*see* Medical Records attached as *Exhibit A*) was a health care provider employed or contracted by the Broward County Sheriff and/or Armor Correctional Health Services to provide health care services to Samuel Mason while he was an inmate in the custody of the Broward County Sheriff between May 19 and May 24, 2011.  The defendant identified in this paragraph took all actions described herein under color of the laws of the State of Florida and/or within the course and scope of his or her employment and/or contractual responsibilities pursuant to sections 768.28(9)(a)

and 111.07.   On information and belief, the Defendant identified in this paragraph is employed in, resides in, and committed tortious acts in the State of Florida and is subject to personal jurisdiction in Florida pursuant to section 48.193, Florida Statutes.

16.     As a direct and proximate result of the Defendants' acts and omissions alleged below, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

a.      pain and suffering of decedent, Samuel Mason, prior to death;

b.      pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

c.      lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.      pecuniary losses including loss of support in money or in kind;

e.      loss of inheritance and/or net accumulations;

f.      lost value of life;

g.      funeral expenses; and/or

h.      any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

**PRE-SUIT MATTERS**

17.     Plaintiff files this Complaint at this time in light of somewhat unclear indications in applicable law regarding the pre-suit notice requirements for the filing of wrongful death actions set

8

forth in section 768.28(6)(a)(2) & 768.28(6)(d), Florida Statutes (requiring medical malpractice and wrongful death actions to be filed within 2 years of accrual and providing for the tolling statute of statutes of limitations while an unresolved claim letter is pending) and the pre-suit notice requirements for medical malpractice actions set forth in section 766.106 and 766.104(2), Florida Statutes (requiring pre-suit procedures to be followed and providing for the automatic extension of applicable statute of limitations for 90 days upon filing of petition with Clerk of Court so pre-suit procedures may be followed).

18.     On March 28, 2011, a pre-suit notice letter pursuant to section 768.28, Florida Statutes, was sent to the Florida Department of Corrections, Sheriff Scott. J. Israeland the Florida Department of Financial Services, Division of Risk Management.  *See* Pre-Suit Notice Letter, dated March 28, 2011, attached as *Exhibit B*.

19.     On March 13, 2013 and May 7, 2013, Plaintiff filed in the Eleventh and Seventeenth Judicial Circuits, respectively, petitions pursuant to section 766.104(2), Florida Statutes, seeking an automatic 90-day extension of the statute of limitations applicable in medical malpractice actions. *See In re Estate of Samuel Washington Mason*, Case No. 13-00006 CA (Fla. 11th Jud. Cir. Mar. 13, 2007), attached as *Exhibit C*; *In re Estate of Samuel Washington Mason*, Case No. PRC13 PRC130000819 (Fla. 17th Jud. Cir., May 7, 2013), attached as *Exhibit D*.

20.     On May 8, 2013, a pre-suit notice letter pursuant to section 768.28, Florida Statutes, was sent to Armor Correctional Services, Inc.  *See* Pre-Suit Notice Letter, dated May 8, 2013, attached as *Exhibit E*.

21.     By virtue of the steps outlined above, Plaintiff submits that the applicable statutes of limitations is currently subject to tolling pending final disposition from Defendants who received

Plaintiff's pre-suit notice letters.  *See* § 768.28(6)(d) (providing for tolling for up to 90 days while claim is being considered).  Moreover, by virtue of the steps outlined above, the applicable statute of limitations on any malpractice cause of action has been extended for an additional 90 days given the submission of the petitions pursuant to section 766.104(2), Florida Statutes, described  above, so the pre-suit procedures set forth in Chapter 766 may be complied with.  During the tolling periods, Plaintiff continues to pursue the pre-suit procedures set forth in Chapter 766 and under section 768.28, Florida Statutes.

## ALLEGATIONS

22.     Samuel Washington Mason was committed to custody of the Florida Department of Corrections from the Broward County Sheriff on May 24, 2011.  He was dead forty-eight hours later.

23.     Mr. Mason had been a truck driver for Nabisco for over seventeen years when he fractured his ankle in an on-the-job accident.  Mr. Mason also suffered from herniated discs in his neck and back.  Mr. Mason was prescribed oxycodone for the pain from his on-the-job accident and, like many others who have been prescribed powerful painkillers, Mr. Mason eventually became heavily addicted to oxycodone and xanax.

24.     On May 19, 2011, Mr. Mason entered a plea of no contest to trafficking in oxycodone and was sentenced to serve an eighteen month sentence in state prison, rather than the three year minimum mandatory sentence.

25.     Upon his health screening on May 19, 2011 at the Broward  County Jail, Mr. Mason informed Latoya Scott, an Emergency Medical Technician who had the responsibility of conducting medical screening of inmates taken into the custody of the Broward County Sheriff, that he was heavily addicted to oxycodone and xanax.   Mr. Mason informed Latoya Scott that he was

accustomed to taking at least 2 milligrams per day of xanax and up to 225 milligrams per day of oxycodone over the past five (5) years.

26.     At the time of his medical intake at the Broward County Jail, it was noted by Latoya Scott in Mr. Mason's intake documentation that Mr. Mason "appear[ed] lethargic," and that there were some, though no "acute signs of benzo/opiate withdrawals."

27.     After his initial screening by Latoya Scott, Vonita Wilcox, a Licensed Practical Nurse who provided health care services to inmates in the custody of the Broward County Sheriff, identified Mr. Mason's medical problem solely as "opiate detox."  Ms. Wilcox ignored the report by Mr. Mason that he had been addicted to xanax for the past five years, as noted by Latoya Scott in the intake documentation.

28.     Despite informing the BSO/Armor Health Care Defendants that he was addicted to oxycodone and xanax for the past five years, the sole health care problem noted on the medical intake documentation for Mr. Mason was a problem with "opiate[s]," (*i.e.*, oxycodone) and the only medical problem addressed by the BSO/Armor Health Care Defendants while Mr. Mason was in the custody of the Broward County Sheriff was for opiate withdrawal.  The BSO/Armor Health Care Defendants ignored the serious problem of Mr. Mason's withdrawal from xanax.

29.     Despite knowing of Mr. Mason's long term addiction to xanax, also known as a class of drug known as a "benzodiazepine" or a "benzo," Mr. Mason was ordered by Vonita Wilcox and the Unidentified Doctor to abruptly discontinue taking xanax in the course of a "No Benzo" detoxification process to take place between May 19 and May 24, 2011.  The withdrawal plan provided for Mr. Mason's abrupt cessation of xanax, even after he reported being addicted to xanax for the past five years.  The decision to place Mr. Mason on a "no benzo" detoxification plan was

11

affirmed by the BSO/Armor unidentified doctor and carried out by Vonita Wilcox.

30.    The abrupt cessation of xanax causes seizures, paranoia, psychosis, extreme anxiety, dizziness, and delirium tremens, among a host of other serious medical conditions of which the Unidentified BSO/Armor Doctor and Vonita Wilcox were aware but ignored.

31.    On May 24, 2011, the custody of Mr. Mason was transferred from the Broward County Sheriff to the South Florida Reception Center, a facility of the Florida Department of Corrections located in the City of Doral, in Miami-Dade County, Florida.

32.    When Mr. Mason was transferred to the custody of the Florida Department of Corrections from the Broward County Sheriff, the commitment papers included a one-page "Transfer Summary to External Facility or Program" document, purporting to advise the Florida Department of Corrections of any of Mr. Mason's ongoing medical or psychiatric problems of which the Florida Department of Corrections should be aware.  The only information provided in the transfer summary regarding Mr. Mason's medical needs were that Mr. Mason had undergone an opiate detoxification program that had ended on May 24, 2011 and that Mr. Mason should remain on a low bunk bed for the next thirty days.   The Transfer Summary did not inform the Florida Department of Corrections that Mr. Mason had also been addicted to xanax for the past five years, that his detoxification program called for the abrupt cessation of xanax, and that as of May 26, Mr. Mason had abruptly ceased all prescription medication to mitigate Mr. Mason's withdrawal symptoms from oxycodone or xanax.

33.    Immediately after he arrived at the South Florida Reception Center, Mr. Mason began experiencing a series of serious medical problems.   Mr. Mason  was screened by the South Florida Reception Center Medical Unit at approximately 1:30 p.m. on May 24, 2011.  By approximately 8:30

p.m. on the evening on May 24, 2011, Mr. Mason urged that he receive medical attention, reporting that he was "anxious"[!] "stressed out[!]," and that he "need[s] medication[!]"

34.     Mr. Mason was then assessed for a "Mental Health Emergency" soon thereafter, where he again reported that he was "anxious," that he had an "anxiety problem," and that he "feels stressed" and that he "needs his medication to relax."    At the time of this Emergency Mental Health Screening, it was noted that Mr. Mason's "current medications" had been "Klonidine/Xanax?" (punctuation in original).  He was sent back to the his dormitory with a recommendation that he receive a consultation the following morning.

35.     At 9:00 a.m. on May 26, 2011, Mr. Mason  again urged that he had a mental health emergency and wanted medical attention.  He said he felt dizzy and almost fainted or suffered from a seizure.   He could not provide sufficient information when asked by Officer Ivan Perez about his medical history. Mr. Mason was then escorted to the medical unit and evaluated by K. Fernandez, Licensed Practical Nurse.  During that assessment, Mr. Mason reported a history of drug abuse.  Ms. Fernandez noted that Mr. Mason had arrived from the County Jail on May 24, 2011 but that Mr. Mason's medical chart was not available.  Mr. Mason had reported a history of seizures and while in the medical department he experienced another seizure or suffered "fainting spell."   He was transferred to the Mental Health Department in a wheelchair for further evaluation.

36.     At approximately 11:00 a.m. on May 26, 2011, Mr. Mason was evaluated by the Mental Health Department, where he reported a history of drug abuse and it was indicated that he had undergone an opiate detoxification  program at the County Jail. After having suffered from an apparent seizure or "fainting spell" in the moments prior to being transferred to the Mental Health Unit, Mr. Mason's speech was "slow" and he "was reluctant to answer questions."   J. Green, the

mental health specialist who evaluated Mr. Mason, concluded that Mr. Mason was malingering and simply experiencing  "some difficulty adjusting to the institution," and released Mr Mason "to continue his orientation."  When he was taken back to the Juliet Dormitory  by wheelchair Mr. Mason was "still not speaking in a clear manner."

37.    Only three hours later, at approximately 2:00 p.m.,  Mr. Mason had begun to exhibit erratic behavior, as noted by Sergeant Michael Wilson, the Second Shift Juliet Dormitory Supervisor, and by correctional officer Malikah Jones, who was assigned to the Juliet Dormitory where Mr. Mason was being housed.  Mr. Mason had purportedly taken off and put back on his clothes in the previous three hours, was alternately yelling and mumbling to himself, and kicking walls and doors and punching windows.

38.    While inside the sally port of the Juliet Dorm  at approximately 3:05 p.m., Mr. Mason continued to purportedly exhibit erratic behavior,  purportedly kicking and banging his head against structures and walls.   Officer Anthony Howell entered the sally port and tackled Mr. Mason, while Sergeant Jarius Green, Captain George Green, Mycnel Jean-Louis and members of the T&R team rushed into the sally port to subdue Mr. Mason.  Mr. Mason suffered another seizure or loss of control as the officers tackled him to the ground, handcuffed him behind his back, shackled his legs, and placed a cloth and mesh hood known as a "spit shield" or "spit hood" over his head.  When the host of officers was descending upon him Mr. Mason pleaded that would "try but . . can't [get up or follow instructions]."

39.    By the time Captain George Green, Sergeant Jarius Green, and Officers Anthony Howell and Mycnell Jean-Louis were joined by members of the T&R team with the cloth and mesh hood also known as a spit shield and leg shackles and  handcuffs, Mr. Mason was visibly bleeding

14

from his nostrils and from and his face because of injuries he sustained prior to and during the process of tackling and restraining him.

40.     With hands cuffed behind his back, legs shackled, with a hood over his head, and bleeding from his face and nostrils, Mr. Mason was held face-down on a stretcher by Captain Green, Sergeant Green, and Officers Howell and Mycnell Jean-Louis.

41.     Mr. Mason was so restrained with the intent to transport him to the "E-Dormitory," or "Confinement" for, among other reasons, punitive purposes.

42.     Dr. M. Limia, a Psychiatrist in the Mental Health Unit, encountered Mr. Mason sometime after 3:10 p.m. outside of the Confinement/E Dormitory in the condition noted immediately above in paragraph 40.   She indicated that she "attempted to talk to inmate Samuel Mason, [but] he only mumbled a few sounds and could not be understood."  Dr. Limia quickly departed and Mr. Mason was to taken, as she had found him -- hands cuffed behind his back, legs shackled, with a hood over his head, bleeding from nose and face and being held faced own on a stretcher by four correctional officers  -- to the Medical Unit.

43.     Carletha Howard and Michele Vassell also purportedly saw Mr. Mason outside of Confinement/the E-Dormitory at approximately 3:15 p.m. in the same condition -- hands cuffed behind his back, legs shackled, a hood over his head, and held face-down on a stretcher by Captain Green, Sergeant Green, and Officers Howell and Mycnell Jean-Louis.  Nurses Howard and Vassell noted by that time that Mr. Mason was unconscious and unresponsive and that his nostrils were filled with blood and that his face was bleeding.  They indicated that Mr. Mason needed to be medically cleared by a doctor before Mr. Mason was placed in Confinement.

44.     Between approximately 3:15pm and 3:25 p.m., Mr. Mason was taken by Captain

Green, Sergeant Green, and Officers Howell and Mycnell Jean-Louis and Nurses Carletha Howard Michele and Vassell to the Medical Unit.

45.     By the time Mr. Mason arrived at the Medical Unit, handcuffed behind his back, legs shackled, a hood over his face, bleeding through his nose and from his face, and held face down by four correctional officers, his heart had stopped and he had stopped breathing.

46.     When the handcuffs, hood, and leg restraints were finally removed, and Mr. Mason was turned over, the efforts to resuscitate Mr. Mason approximately fifteen minutes after he had lost consciousness were unsuccessful.  Mr.  Mason was pronounced dead by reason of cardiac arrest by Miami-Dade Fire Rescue at approximately 3:54 p.m.

**COUNT I**
**MEDICAL MALPRACTICE UNDER FLORIDA LAW**
**(Defendants Israel, Armor, Wilcox, and Unidentified BSO/Armor Doctor)**

47.     Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

48.     Plaintiff asserts this Count against Defendant Scott Israel in his capacity as Broward County Sheriff, for the acts and/or omissions of Armor Correctional Health Services, Defendant Vonita Wilcox, the Unidentified BSO/Armor Doctor named herein committed in the course of and within the scope of their employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.

49.     Plaintiff asserts this Count against Defendant Armor Correctional Health Services and Defendants Vonita Wilcox and the Unidentified BSO/Armor Doctor named herein, to the extent section 768.28(9)(a), Florida Statutes, is inapplicable.

50.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor were aware that Mr. Mason was heavily addicted to oxycodone and xanax and had used these drugs daily for the five

16

years prior to Mr. Mason being taken into custody of the Broward County Sheriff on May 19, 2011 to serve his prison sentence.

51.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor were aware that the abrupt cessation of benzodiazepines causes serious medical problems including, but not limited to, seizures, paranoia, psychosis, extreme anxiety, dizziness, and delirium tremens.

52.     Despite their knowledge of the serious medical problems caused by the abrupts cessation of benzodiazepines described above in paragraph 51, and despite their knowledge that Mr. Mason had taken xanax in quantities of 2 milligrams daily for the past five years, Defendants Israel, Armor, Wilcox and the Unidentified Doctor ordered Mr. Mason to abruptly cease taking xanax, which these Defendants knew or should have known was foreseeable and likely to cause Mr. Mason to suffer the serious medical conditions described above in paragraph 51.

53.     Mr. Mason in fact did suffer the serious medical conditions described above in paragraph 51, including seizures, dizziness, extreme anxiety, and symptoms consistent with delirium.

54.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor had a duty to comply with the standard of medical care in the medical community pertaining to the treatment of and detoxification from benzodiazepine dependence.

55.     The decision that Mr. Mason should abruptly cease taking xanax after reporting benzodiazepine dependence for the past five years breached the standard of medical care in the relevant medical community pertaining to the treatment of and detoxification from benzodiazepine dependence.

56.     As a direct and proximate cause of the breach of the standard of medical care alleged in this Count, Mr. Mason suffered serious medical conditions which proximately led to the series

17

of events that caused him to be restrained and die in the manner alleged herein.

57.     As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

a.     pain and suffering of decedent, Samuel Mason, prior to death;

b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.     pecuniary losses including loss of support in money or in kind;

e.     loss of inheritance and/or net accumulations;

f.     lost value of life;

g.     funeral expenses; and/or

h.     any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

## COUNT II
## MEDICAL MALPRACTICE UNDER FLORIDA LAW
### (Defendants Israel, Armor, Wilcox, and Unidentified BSO/Armor Doctor)

58.     Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

59.     Plaintiff asserts this Count against Defendant Scott Israel in his capacity as Broward County Sheriff, for the acts and/or omissions of Defendant Vonita Wilcox and the Unidentified BSO/Armor Doctor named herein committed in the course of and within the scope of their employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.

60.     Plaintiff asserts this Count against Defendant Armor Correctional Health Services and Defendants Vonita Wilcox and the Unidentified BSO/Armor Doctor named herein, to the extent section 768.28(9)(a), Florida Statutes, is inapplicable.

61.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor were aware that Mr. Mason was heavily addicted to oxycodone and xanax and had used these drugs daily for the five years prior to Mr. Mason being taken into custody of the Broward County Sheriff on May 19, 2011 to serve his prison sentence.

62.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor were aware that the abrupt cessation of benzodiazepines causes serious medical problems including, but not limited to, seizures, paranoia, psychosis, extreme anxiety, dizziness, and symptoms consistent with delirium tremens.

63.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor were under a duty to comply with the standard of medical care in the medical community pertaining to the transmission of critical information to guarantee a continuum of medical care for serious medical conditions.

19

64.     Defendants Israel, Armor, Wilcox and the Unidentified Doctor breached the standard of medical care pertaining to the transmission of critical information to guarantee a continuum of care for a serious medical condition because they failed to transmit or cause to be transmitted to the Florida Department of Corrections the extent of Mr. Mason's prior xanax dependency, the substandard decision to cause Mr. Mason to abruptly cease taking xanax while in the custody of the Broward County Sheriff, and  the fact that the transfer to the Florida Department of Corrections would cause Mr. to abruptly cease taking Clonidine an anti-anxiety medication Mr. Mason's had been prescribed while he was in the custody of the Broward County Sheriff.

65.     As a direct and proximate result of the breach of the standard of medical care pertaining to the transmission of critical information to guarantee a continuum of medical care for serious medical conditions, the Florida Department of Corrections did not know that Mr. Mason was likely to and in fact was suffering from the serious medical conditions associated with the abrupt cessation of benzodiazepines, such as seizures, paranoia, psychosis, extreme anxiety, dizziness, and symptoms consistent with delirium tremens.

66.     As a direct and proximate cause of the breach of the standard of medical care alleged in this Count, Mr. Mason suffered serious medical conditions which proximately led to the series of events that caused him to be restrained and die in the manner alleged herein.

67.     As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

        a.      pain and suffering of decedent, Samuel Mason, prior to death;

        b.      pain  and  suffering  of  Plaintiff,  survivors,  beneficiaries  and/or  heirs  of

20

decedent including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

        c.      lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

        d.      pecuniary losses including loss of support in money or in kind;

        e.      loss of inheritance and/or net accumulations;

        f.      lost value of life;

        g.      funeral expenses; and/or

        h.      any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

## COUNT III
### 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
#### (Scott Israel, Vonita Wilcox and Unidentified BSO/Armor Doctor)

68.    Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

69.    As Broward County Sheriff, Scott Israel established the policies and procedures relating to the medical care provided to inmates in his custody. For purposes of this Count, Mr.

Israel is named in his individual capacity for his role in establishing and/or approving such policies and is accordingly a "person" for purposes of 42 U.S.C. § 1983 .

70.     As employees of the Broward County Sheriff, on information and belief, Vonita Wilcox and the unidentified BSO/Armor Doctor are employees or agents of the Broward County Sheriff and are accordingly "persons" for purposes of 42 U.S.C. § 1983.

71.     By virtue of their training and experience, Scott Israel, Vonita Wilcox and the Unidentified BSO/Armor Doctor were aware that the abrupt cessation of benzodiazepines causes serious medical problems including, but not limited to, seizures, paranoia, psychosis, extreme anxiety, dizziness, and symptoms consistent with delirium tremens.

72.     Despite having knowledge of the serious medical conditions caused by the abrupt cessation of benzodiazepines, on information and belief, Scott Israel established a "no benzodiazepine" policy for inmates in his custody and care.

73.     Vonita Wilcox and the Unidentified BSO/Armor Doctor specifically knew that Mr. Mason had taken at least 2 miligrams of xanax  per day for the past five years.

74.     Despite having actual knowledge of Mr. Mason's dependence on xanax and the substantial and foreseeable risk that he would experience, among other symptoms,  seizures, paranoia, psychosis, extreme anxiety, dizziness, and symptoms consistent with delirium tremens, Vonita Wilcox and the Unidentified BSO/Armor Doctor established a "no benzodiazepine" detoxification program for Mr. Mason.

75.     The Eighth Amendment to the United States Constitution prohibits the deliberate indifference to serious medical needs.  By ordering a "no benzodiazepine" detoxification process for Mr. Mason pursuant to policy established by Scott Israel, Vonita Wilcox, Scott Israel and the

Unidentified BSO/Armor Doctor caused Mr. Mason to needlessly suffer the serious medical conditions alleged herein, which proximately caused him to be subject to restraint procedures alleged herein and die.

76.     As a direct and proximate cause of the violation of federal law alleged in this Count, Mr. Mason suffered serious medical conditions which proximately led to the series of events that caused him to be restrained in the manner alleged herein and die.

77.     As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

        a.     pain and suffering of decedent, Samuel Mason, prior to death;

        b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

        c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

        d.     pecuniary losses including loss of support in money or in kind;

        e.     loss of inheritance and/or net accumulations;

        f.     lost value of life;

        g.     funeral expenses; and/or

        h.     any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

**COUNT IV**
**NEGLIGENCE UNDER FLORIDA LAW**
**(Florida Department of Corrections)**

78.     Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

79.     Plaintiff asserts this Count against Defendant Florida Department of Corrections as an agency of the State of Florida for the acts and/or omissions of Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia committed in the course of and within the scope of their employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.

80.     Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware the Mr. Mason was an extremely large man at 6 feet 2 inches tall and weighing approximately 260 pounds.

81.     When undertaking the task of restraining an inmate or monitoring an inmate who is subject to restraints, Dependants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were under a duty to exercise reasonable care.

82.     Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware per their training or otherwise that in

the case of the restraint of man the size of Mr. Mason who is restrained with his hands behind his back and/or with his legs restrained, reasonable care calls for the officers to be vigilante against the danger of compression asphyxiation.  Compression asphyxiation foreseeably occurs when a large individual is restrained face down with his hands behind his back and/or his legs are retrained and downward force is used by one or more officers to maintain control over the person being restrained. The inability of the individual to protect himself by virtue of the restraints to his hands and legs, coupled with the downward compression of the restraining officers creates a substantial risk of suffocation or asphyxiation because the person cannot breathe.

83.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware per their training that in the case of the restraint of man the size of Mr. Mason who is restrained with his hands behind his back and/or with his legs restrained, reasonable care calls for vigilance against that danger of positional asphyxiation. Positional asphyxiation foreseeably occurs when a large individual is restrained in a prone position, face down, with his hands behind his back and/or his legs restrained and the individual is powerless to counter the suffocating pressure created by his own mass.  The inability of the individual to protect himself by virtue of the restraints to his hands and legs, coupled with his own mass, creates a substantial risk of suffocation or asphyxiation because the person cannot breathe.

84.    Where Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis created the foreseeable and substantial risk that Mr. Mason could likely suffocate from compression asphyxiation or positional asphyxiation because he was handcuffed behind his back, his legs shackled, and being held facedown on a stretcher between approximately 3:10 p.m. and 3:25 p.m., they and Carletha Howard, Michele Vassell and M. Limia were under a duty to monitor Mr.

25

Mason's condition to ensure that he continued to breathe and, if they found that he was not breathing, to alter the nature of his restraint or position so that he would not suffocate.

85.     Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis Carletha Howard, Michele Vassell and M. Limia breached their duty of care when they undertook to restrain and monitor Mr. Mason while he was restrained but failed to take steps to prevent the substantial and foreseeable risk that Mr. Mason would suffocate because of compression asphyxiation and/or positional asphyxiation.

86.     As a direct and proximate cause of the breaches of duty alleged in this Count, Mr. Mason experienced compression asphyxiation and/or positional asphyxiation, suffered cardiac arrest and died.

87.     As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

     a.     pain and suffering of decedent, Samuel Mason, prior to death;

     b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

     c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

     d.     pecuniary losses including loss of support in money or in kind;

     e.     loss of inheritance and/or net accumulations;

     f.     lost value of life;

g.      funeral expenses; and/or

h.      any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiffs demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

## COUNT V
## NEGLIGENCE UNDER FLORIDA LAW
### (Florida Department of Corrections)

88.     Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

89.     Plaintiff asserts this Count against Defendant Florida Department of Corrections as an agency of the State of Florida for the acts and/or omissions of Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell, and M. Limia committed in the course of and within the scope of their employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.

90.     When undertaking the task of restraining an inmate or monitoring a restrained inmate, Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis, Carletha Howard, Michele Vassell, and M. Limia were under a duty to exercise reasonable care.

91.     In the course of restraining Mr. Mason, George Green called for and received a spit shield from the T&R team that was called in to assist with the restraining of Mr. Mason.

92.     A "spit shield" or "spit hood" is a cloth and mesh hood placed over the head of a person who may present a danger of spitting, which danger Mr. Mason apparently presented while exhibiting erratic behavior.

93.     Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell, and M. Limia were aware per their training or otherwise that in making the decision to place a spit hood over a person's head there are certain contraindications, among which are the existence of blood coming from or from areas around that person's face. Where the person is bleeding from or from areas around the face, reasonable care provides that a spit hood must not be used, to guard against the substantial and foreseeable risk that use of a spit hood on a person that his bleeding on and around the face will cause that person to have difficulty breathing and suffocate.

94.     Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell, and M. Limia were aware per their training or otherwise that in making the decision to place a spit hood over a person's head reasonable care requires that the person be closely monitored to ensure that he is able to continue to breathe freely.

95.     At the time they restrained Mr. Mason, Defendants Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis were aware that Mr. Mason was bleeding from his head and his nose because, as they reported, Mr. Mason had purportedly been banging his head against the wall and structures.

96.     Despite being aware of the prohibition against the use of a spit hood on an individual who is bleeding from the face and from areas the face because of the substantial and foreseeable risk that the person could suffocate, Defendants Jarius Green, George Green, Anthony Howell, Mycnel

Jean-Louis, Carletha Howard, Michele Vassell and M. Limia breached their duty of care by causing a spit hood to be placed and kept on Mr. Mason's head between approximately 3:10 p.m. and 3:25 p.m.

97.     During the period of time Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia caused a spit hood to remain on Mr. Mason's head, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia did not take steps to ensure that Mr. Mason was able to breathe freely.  In fact, during the period of time Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia caused the spit hood to remain on Mr. Mason's head, they increased the substantial risk that Mr. Mason could not breathe by restraining his hands behind his back, preventing Mr. Mason from positioning himself or the spit hood so he could continue to breath, and Defendants Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis continued to press Mr. Mason face-down into the stretcher while they transported him from the Juliet Dormitory to the Medical Unit.

98.      As a direct and proximate result of the breaches of the duty of care alleged in this Count, Mr. Mason suffocated, suffered cardiac arrest, and died.

99.     As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

        a.      pain and suffering of decedent, Samuel Mason, prior to death;

        b.      pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent including but not limited to, the mental anguish suffered by said individuals as a result of

the deaths of the decedent;

   c. lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

   d. pecuniary losses including loss of support in money or in kind;

   e. loss of inheritance and/or net accumulations;

   f. lost value of life;

   g. funeral expenses; and/or

   h. any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

  WHEREFORE, Plaintiffs demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

**COUNT VI**
**MEDICAL MALPRACTICE UNDER FLORIDA LAW**
**(Florida Department of Corrections)**

  100. Plaintiff repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

  101. Plaintiff asserts this Count against Defendant Florida Department of Corrections as an agency of the State of Florida for the acts and/or omissions of J. Green and, a Licensed Mental Health Counselor, and K. Fernandez and Licensed Practical Nurse, and any other health care providers or medical records personnel committed in the course of and within the scope of their

employment pursuant to sections 768.28(9)(a) and 111.07, Florida Statutes.

102.   The Florida Department of Corrections, as custodian of Mr. Mason, had a duty to maintain medical records and critical medical information pertaining to Mr. Mason in such a way that it could provide a continuum of continuing care to treat Mr. Mason's serious medical needs.

103.   Mr. Mason's medical records indicate in the 48 hours Mr. Mason was in the custody of the Florida Department of Corrections, his ability to communicate his medical needs deteriorated rapidly.  He suffered two fainting dizzy spells consistent with the onset of seizures and had declared two mental health emergencies.  Both medical personnel who evaluated Mr. Mason on the morning of May 26, 2011, Nurse K. Fernandez and J. Green, noted that they had no medical history, despite Mr. Mason having been in the facility since May 24, 2011.

104.   Compounding the error committed by the Broward County Sheriff in failing to transmit critical health care information reporting that Mr. Mason had abruptly discontinued the use of benzodiazepines after five years of dependency, was the fact that when Mr. Mason was indeed evaluated at the Florida Department of Corrections at approximately 8:30 p.m. on May 24, 2011 and indicated that he had been taking Klonidine and Xanax and was suffering severe withdrawal symptoms, urging that he had a a"Mental Health Emergency," that he "needed his medication[!]" and that he was "stressed[!]"

105.   Had K. Fernandez and J. Green had sufficient medical information from Mr. Mason's medical records, they would have concluded *not* that Mr. Mason was malingering and "having difficulty adjusting to the institution," but rather he was suffering from the serious medical conditions that are caused by abrupt benzodiazepine withdrawal.  These conditions were further compounded by the abrupt withdrawal from Clonidine that Mr. Mason had taken as part of the opiate

31

detoxification program in the Broward County Jail.

106.    Had Mr. Mason been correctly diagnosed with benzodiazepine withdrawal informed by the medical information he had already given on May 24 and which should have been readily available to the medical personnel who subsequently came in contact with Mr. Mason on May 26, 2011, he would not have been released back to the Juliet Dormitory where subject the restraints alleged herein and died.

107.    As a direct and proximate result of the breaches of the duty of care alleged in this Count, Mr. Mason was asphyxiated, suffered cardiac arrest and died.

108.    As a direct and proximate result of the Defendants' acts and omissions alleged in this Court, the Florida Department of Corrections is liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

        a.    pain and suffering of decedent, Samuel Mason, prior to death;

        b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

        c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

        d.    pecuniary losses including loss of support in money or in kind;

        e.    loss of inheritance and/or net accumulations;

        f.    lost value of life;

        g.    funeral expenses; and/or

        h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the

survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiffs demands judgment in excess of the jurisdictional limits of this Court against the Florida Department of Corrections for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

**COUNT VII**
**CLAIM 42 U.S.C. § 1983**
**EXCESSIVE FORCE RELATING TO THE USE OF PRONE RESTRAINT AND REFUSING TO MONITOR BREATHING**
**(Defendants Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis)**

109.    Plaintiffs repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

110.    This Count is brought against Defendants Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis.   Each of these Defendants is a "person" for purposes of 42 U.S.C. § 1983.

111.    The Eighth Amendment to the United States Constitution prohibits the use of excessive force in the custodial setting.

112.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis caused Mr. Mason to be restrained with his hands cuffed behind his back, his legs shackled, a hood place over his face, and was forced face-down on a stretcher.

113.    At the time Mr. Mason was restrained, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis alleged Mr. Mason had repeatedly refused to obey lawful commands and, at one point, attempted to spit at them.  At the time Defendants Jarius Green, George

33

Green, Anthony Howell, Mycnel Jean-Louis restrained Mr. Mason, they were going to transport him to "E-Dormitory," or "Confinement," for punitive purposes for refusing to follow instructions. Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis applied the restraints used, and did not temper their use of restraints when the need for use of the restraint had dissipated, for punitive purposes.

114.    Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis were aware the Mr. Mason was an extremely large man at 6 feet 2 inches tall and weighing approximately 260 pounds.

115.    Defendants Jarius Green, George Green, Anthony Howell, and Mycnel Jean-Louis were aware per their training or otherwise that in the case of the restraint of man the size of Mr. Mason who is restrained with his hands behind his back and/or with his legs restrained, reasonable care calls for the officers to be vigilant against that danger of compression asphyxiation. Compression asphyxiation foreseeably occurs when a large individual is restrained face-down with his hands behind his back and/or his legs are retrained and downward force is used by one or more officers to maintain control over the person being restrained.  The inability of the individual to protect himself by virtue of the restraints to his hands and legs, coupled with the downward compression of the restraining officers, creates a substantial risk on suffocation or asphyxiation because the person cannot breath.

116.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia were aware per their training that in the case of the restraint of man the size of Mr. Mason who is restrained with his hands behind his back and/or with his legs restrained, reasonable care calls for vigilance against the danger of positional

asphyxiation.  Positional asphyxiation foreseeably occurs when a large individual is restrained face down with his hands behind his back and/or his legs restrained and the individual is powerless to counter the suffocating pressure created by his own mass.  The inability of the individual to protect himself by virtue of the restraints to his hands and legs, coupled with his own mass, creates a substantial risk on suffocation or asphyxiation because the person cannot breath.

117.    By 3:15 p.m. Mr. Mason had been subdued by Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis and had lost consciousness. There was by that time no longer a need to continue to restrain Mr. Mason with leg shackles, handcuffs behind his back, with a hood over his head, and forced face-down on a stretcher.   However, the Defendant continued the use of these restraints and did not temper their continued use of these restraints with the intention of escorting Mr. Mason to "confinement" for punitive purposes.

118.    As of 3:15 p.m., the need for the continued use of force had rapidly dissipated and the force applied should have been tempered given that Mr. Mason had already lost consciousness and was unresponsive per M. Limia, Carletha Howard and Michele Vassell.

119.    At no point during the time Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis had Mr. Mason with his hands cuffed behind his back, his legs shackled, with a hood over his face and being forced face-down into the stretcher, did they attempt to temper the restraint applied to Mr. Mason even as the need for the continued application of force had fully dissipated and Mr. Mason was unconscious and unresponsive.

120.    At no point during the period of time that Mr. Mason was cuffed with his hands behind his back, his legs shackled, with a hood over his face,  and being compressed face-down into the stretcher by four corrections officers, did Defendants Jarius Green, George Green, Anthony

Howell and Mycnel Jean-Louis check if Mr. Mason was breathing. Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis did not monitor Mr. Mason's breathing though they knew that Mr. Mason's size and restrained and prone position, coupled with the pressure applied by four correctional officer, created a substantial risk that Mr. Mason would suffer compression asphyxiation and/or positional asphyxiation.

120.    The continued application of force under these circumstances where the need to continue the use of force or restraints had disappeared -- between approximately 3:15 p.m. and 3:25 p.m. -- was such that Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis exhibited a knowing willingness that Mr. Mason would indeed suffer positional or compression asphyxiation.

121.    The continued use of the restraint applied to Mr. Mason, with his hands cuffed behind his back, legs shackled, with a hood over his head, and with four correctional officer pressing him face-down into a stretcher, while Mr. Mason was unconscious and unresponsive, was unjustified and excessive given the substantial and foreseeable risk that Mr. Mason should and would suffer from positional asphyxiation or compression asphyxiation in violation of the Eighth Amendment to the United States Constitution.

122.    As a direct and proximate cause of the violation of federal law alleged in this Count, Mr. Mason was asphyxiated, suffered cardiac arrest, and died.

123.    As a direct and proximate result of the violations of federal law alleged in this Court, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

        a.      pain and suffering of decedent, Samuel Mason, prior to death;

36

       b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

       c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

       d.     pecuniary losses including loss of support in money or in kind;

       e.     loss of inheritance and/or net accumulations;

       f.     lost value of life;

       g.     funeral expenses; and/or

       h.     any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

**COUNT VIII**
**42 U.S.C. § 1983**
**EXCESSIVE FORCE RELATING TO USE OF SPIT HOOD WHEN BLEEDING FROM**
**FACE AND RESTRAINED AND REFUSING TO MONITOR BREATHING**
**(Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha**
**Howard, Michele Vassell  and M. Limia)**

124.    Plaintiffs repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

125.    This Count is brought against Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia in their individual capacities.   Each of these Defendants is a "person" for purposes of 42 U.S.C. § 1983.

126.    The Eighth Amendment to the United States Constitution prohibits the use of excessive force in the custodial setting.

127.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis caused Mr. Mason to be restrained with hands cuffed behind his back, his legs shackled, and placed in a prone position, face-down on a stretcher.

128.    In the course of restraining Mr. Mason, George Green called for and received a spit shield from the T&R team that was called in to assist with tackling and restraining Mr. Mason.

129.    A "spit shield" or "spit hood" is a cloth and mesh hood placed over the head of a person who may present a danger of spitting, which danger Mr. Mason apparently presented while exhibiting erratic behavior.

130.    At the time Mr. Mason was restrained, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis alleged Mr. Mason had repeatedly refused to obey lawful commands and, at one point, attempted to spit at them.  At the time Defendants Jarius Green, George

38

Green, Anthony Howell, Mycnel Jean-Louis restrained Mr. Mason, they were going to transport him to "E-Dormitory," or "Confinement," for punitive purposes for refusing to follow instructions. Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis applied the restraints used, and did not temper their continued use of the restraints or the spit hood when the need for use of the restraints and spit hood had dissipated, for punitive purposes.

131.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia were aware per their training or otherwise that in making the decision to place a spit hood over a person's head there are certain contraindications, among which are the existence of blood coming from the person's face or from areas around the person's face.  Where the person is bleeding from the face or from areas around the face, a spit hood should not be used to guard against the substantial and foreseeable risk that use of a spit hood on a person that his bleeding from areas around the face will cause that person to have difficulty breathing and suffocate.

132.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware per their training or otherwise that in making the decision to place a spit hood over  person's head reasonable care requires that the person be closely monitored to ensure that he is able to breathe freely.

133.    At the time they restrained Mr. Mason, Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis were aware that Mr. Mason was bleeding from his head and his nose because, as they reported, Mr. Mason had purportedly been banging his head against the wall and structures.

134.    Despite being aware of the prohibition against the use of a spit hood on a person who

is bleeding from his face because of the substantial and foreseeable risk that the person could suffocate, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia caused a spit hood to be placed and kept on Mr. Mason's head between approximately 3:10 p.m. and 3:25 p.m.

135.    By 3:15 p.m., Mr. Mason had been fully subdued by Defendants Jarius Green, George Green, Anthony Howell and Mycnel Jean-Louis and had lost consciousness. There was by that time no longer a need to continue to restrain Mr. Mason with leg shackles, with his hands cuffed behind his back, with a hood over his head, and forced face-down on a stretcher. Because Mr. Mason was no longer conscious, there was also no longer a need to keep a spit hood over his bleeding face.

136.    As of 3:15 p.m., the continued use of the spit hood over Mr. Mason's bleeding face should have ceased given that Mr. Mason had already lost consciousness and was unresponsive per M. Limia, Carletha Howard and Michele Vassell.

137.    At no point after 3:15 p.m., during the time Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, M. Limia, Carletha Howard or Michele Vassell call for the spit shield to be removed from Mr. Mason's bleeding face, despite the fact that there was no longer a threat that he would spit because he had lost consciousness and was unresponsive.

138.    At no point after 3;15 p.m. during the period of time that Mr. Mason was cuffed with his hands behind his back, his legs shackled, with a hood over his face, and being compressed face-down into the stretcher by four corrections officers, did Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, M. Lia, Carletha Howard, or Michele Vasell check if Mr. Mason had stopped breathing.

139.    The continued application of the spit hood under these circumstances between 3:15

p.m. and 3:25 p.m., and the failure to monitor if Mr. Mason was breathing were such that Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis and M. Lia, Carletha Howard, or Michele Vasell exhibited a knowing willingness that Mr. Mason should indeed suffer from asphyxia as a result of the application of the spit hood over his bleeding face or compression asphyxiation.

140.    The continued use of the spit hood over Mr. Mason's bloody face, while he was shackled with his hands behind his back and legs shackled and being forced face down into a stretcher, even after Mr. Mason had lost consciousness and was unresponsive was unjustified and excessive given the substantial and foreseeable risk that Mr. Mason should and would suffer from asphyxia in violation of the Eighth Amendment to the United States Constitution.

141.    As a direct and proximate cause of the violations of federal law alleged in this Count, Mr. Mason was asphyxiated, suffered cardiac arrest, and died.

142.    As a direct and proximate result of the violations alleged in this Count, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

    a.    pain and suffering of decedent, Samuel Mason, prior to death;

    b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

    c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

    d.    pecuniary losses including loss of support in money or in kind;

    e.    loss of inheritance and/or net accumulations;

41

      f.      lost value of life;

      g.      funeral expenses; and/or

      h.      any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

### COUNT X
### 42 U.S.C. § 1983
### EXCESSIVE FORCE -- FAILURE TO INTERVENE
### DUE PROCESS -- DUTY TO PROTECT ONE WHO IS RESTRAINED
### (Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia)

143.    Plaintiffs repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

144.    This Count is brought against Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia in their individual capacities.   Each of these Defendants is a "person" for purposes of 42 U.S.C. § 1983.

145.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware of the dangers of positional asphyxiation and compressional asphyxiation presented by the manner in which Mr. Mason was restrained with his hands cuffed behind his back, his legs shackled, and being placed face-down on

a stretcher.

146.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware of the danger of asphyxiation presented by the use of a spit hood on an individual who is bleeding from the face and the nose.

147.    Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware as of 3:15 p.m. that Mr. Mason, restrained as he was with his hands cuffed behind his back, his legs shackled, and with a hood over his bloody face, was unconscious and unresponsive and no longer presented a threat.

148.    Despite having knowledge of the substantial risks of several modes of asphyxiation presented by the manner in which Mr. Mason was restrained and hooded, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia had the opportunity to but did not intervene to call for the restraints on Mr. Mason to be removed or tempered, for his position to be altered so that he was no longer prone, that compression cease being applied to push him into the stretcher, or that the spit hood be removed to protect against the substantial and foreseeable risk that Mr. Mason would asphyxiate and die.

149.    The failure, after 3:15 p.m., to intervene by Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia  to protect Mr. Mason when the need further restraint had fully dissipated because Mr. Mason was unconscious and unresponsive, constitutes and independent violation of the Eighth Amendment's prohibitions against the use of excessive force in the custodial situation.

150.    The failure, after 3:15 p.m., to intervene by Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia  to protect

43

Mr. Mason while he was restrained, when the need further restraint had fully dissipated because Mr. Mason was unconscious and unresponsive, constitutes and independent violation of the Fourteenth Amendment guarantee of due process and the protection of persons who are subject to the restraint of their liberty.

151.    As a direct and proximate cause of the violations of federal law alleged in this Count, Mr. Mason was asphyxiated, suffered cardiac arrest, and died.

152.    As a direct and proximate result of the violations alleged in this Count, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

a.    pain and suffering of decedent, Samuel Mason, prior to death;

b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.    pecuniary losses including loss of support in money or in kind;

e.    loss of inheritance and/or net accumulations;

f.    lost value of life;

g.    funeral expenses; and/or

h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

**COUNT XI**
**42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS  -- FAILURE TO MONITOR BREATHING**
**(Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia)**

153.    Plaintiffs repeats and realleges paragraphs 1 through 46, incorporating them by reference herein.

154.    This Count is brought against Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia in their individual capacities.   Each of these Defendants is a "person" for purposes of 42 U.S.C. § 1983.

155.    The Eighth Amendment to the United States Constitution prohibits the deliberate indifference to serious medical needs.

156.    By restraining or monitoring Mr. Mason while he was restrained with his hands behind his back, with his legs shackled, with a hood over his bloody face, and being compressed face-down into a stretcher, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia were aware that Mr. Mason was suffering from a serious medical need -- the need to continue to breath compromised by the dangers of compresssional asphyxiation, positional asphyxiation, or asphyxiation caused by having a spit hood over a bloody face and being face down on a stretcher.

45

157.    As of 3:15 p.m., Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell and M. Limia were aware of the acute danger presented by the manner in which Mr. Mason had been restrained and hooded, and were also aware that any risk presented by his earlier conduct had completely dissipated and the need for further restraint had evaporated because Mr. Masons was unconscious and unresponsive.

158.    As of 3:15 p.m.,  Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia had known that Mr. Mason had lost consciousness but none of these Defendants continued to monitor Mr. Mason's breathing or heart beat between 3:15 p.m. and 3:25 p.m.

159.    By refusing to monitor Mr. Mason's breathing while knowing that Mr. Mason was suffering from a serious medical condition, Defendants Jarius Green, George Green, Anthony Howell, Mycnel Jean-Louis, Carletha Howard, Michele Vassell  and M. Limia caused Mr. Mason to needlessly suffer asphyxiation and die.

160.    As a direct and proximate cause of the violation of federal law alleged in this Count, Mr. Mason was asphyxiated, suffered cardiac arrest, and died.

161.    As a direct and proximate result of the violations alleged in this Count, the Defendants are liable for all damages to which the injured Plaintiff is entitled as applicable law may provide including, but not limited to:

a.    pain and suffering of decedent, Samuel Mason, prior to death;

b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent  including but not limited to, the mental anguish suffered by said individuals as a result of the deaths of the decedent;

     c.      lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

     d.      pecuniary losses including loss of support in money or in kind;

     e.      loss of inheritance and/or net accumulations;

     f.      lost value of life;

     g.      funeral expenses; and/or

     h.      any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled and which this Court may find applicable.

WHEREFORE, Plaintiff demands judgment in excess of the jurisdictional limits of this Court against Defendants for compensatory damages all prejudgment and post-judgment interest available under applicable law, and attorneys fee and costs, together with interest and such other relief as this Court deems appropriate.

## JURY TRIAL DEMAND

162.    Plaintiffs demand a trial by jury of all issues so triable as of right by a jury.

DATED this 15th day of May, 2013       BARZEE FLORES
                                        Courthouse Center, Penthouse One
                                        40 NW 3rd Street
                                        Miami, Florida  33128
                                        T: (305) 374-3998
                                        F: (305) 374-3985

                                        By:  /s/  Alexander Rundlet
                                            Alexander Rundlet
                                          Florida Bar No.: 0692301
                                          alexanderrundlet@barzeeflores.com